In re:

SEVEN OAKS PARTNERS, L.P.

*Debtor.*

Civil No. 3:17-CV-624 (JBA)

January 3, 2018

CYNTHIA LICATA,

*Appellant,*

*v.*

SEVEN OAKS PARTNERS, L.P.,

*Appellee.*

**RULING AND ORDER**

Appellant Cynthia Licata has appealed [Doc. # 1] the order of the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court") which sustained [Doc. #1-1] Debtor-Appellee Seven Oaks Partners, L.P.'s objection to Ms. Licata's Proof of Claim. In its order, the Bankruptcy Court disallowed Ms. Licata's Proof of Claim in the amount of $900,000, in its entirety, as untimely filed. ([Doc. #1-1.]) Ms. Licata contends that the Bankruptcy Court erred as a matter of law in sustaining the Debtor's objection to her claim. For the reasons that follow, the Court affirms the Bankruptcy Court's disallowance of Ms. Licata's Proof of Claim.

I.      **Background**

Prior to Debtor's bankruptcy filing, Debtor and Appellant "had been engaged [for several years] . . . in state court litigation concerning property at 23 Meeting House Road, Greenwich, CT." (Appellant's Br. [Doc. # 9] at 5.) Debtor "sought to foreclose a mortgage it held on the Property" and "Appellant asserted counterclaims based on [alleged] misrepresentations made by Debtor's

principal Murray Chodos." (*Id.*) On September 27, 2006, a state court jury awarded Appellant $500,000 in damages, which was affirmed by the Connecticut Appellate Court on August 18, 2009. *Sovereign Bank v. Licata*, 116 Conn. App. 483, 491, 509 (2009). The Connecticut Supreme Court heard argument on Debtor's appeal on January 11, 2012, twenty days before Debtor filed its Chapter 7 bankruptcy petition, and on February 21, 2012, the Connecticut Supreme Court dismissed the appeal, finding that certification had been granted improvidently. *Sovereign Bank v. Licata*, 303 Conn. 721, 722 (2012).

The Debtor's Chapter 7 Bankruptcy Petition omitted any mention of Appellant's judgment, but did list the state court litigation with the description "Debtor claim against defaulted borrower." (Appellant's Appx. [Doc. # 10] at 6, 11-19, 24, 32-33.)

On April 4, 2012, Debtor moved to convert its case from a Chapter 7 Bankruptcy to a Chapter 11 Bankruptcy, and the case was converted on April 12, 2012. (*Id.* at 39, 43.) The Conversion Order instructed Debtor to file the statements and schedules required by Bankruptcy Rule 1007(b) within 15 days and to file a list of the names, addresses, and amount of claims of the creditors that held the 20 largest unsecured claims, as required by Bankruptcy Rule 1007(d), within 2 days. (*Id.* at 43.) Appellant was not provided notice of the conversion, and was not included in the list of Debtor's 20 largest unsecured creditors. (*Id.* at 40-41, 45-46.) Appellant was similarly not listed as a creditor in the amended schedules that Debtor filed on May 11, 2012 and June 27, 2012. (*Id.* at 48, 61; Appellant's Appx. Vol. 2 [Doc. # 10-1] at 2, 11.)

On November 13, 2012, in a hearing on the state court matter of *Sovereign Bank v. Licata*, Appellant's attorney, Ridgely W. Brown, noted on the record that Debtor had not listed Ms. Licata "as a creditor in the bankruptcy proceeding[,]" and that Ms. Licata had received "[n]o notice

whatsoever" of the bankruptcy proceeding.[1] (Appellee's Br. and Appx. [Doc. # 13] at 108-09.) Debtor's state-court counsel acknowledged that he had "observe[d] that . . . [Ms. Licata was] not listed in the original schedules[]" that Debtor had filed, but stated that he had "notified [Debtor's] bankruptcy counsel" and that Debtor's bankruptcy counsel had "told me that he was going to add them to the schedule and put them on notice." (*Id.* at 109.)

On November 14, 2012, Debtor filed another set of amended schedules, which listed Appellant as holding an unsecured claim in the amount of $500,000. (Appellant's Appx. Vol. 2 at 27, 32.) On this amended Schedule F, which lists creditors holding unsecured non-priority claims, Debtor marked Appellant's $500,000 claim as "unliquidated" and as "disputed." (*Id.* at 32.)

---

[1] This hearing is referenced throughout this Ruling as the "November 13, 2012 hearing." Debtor-Appellee's attorney explained the nature of the hearing as follows in his affidavit:

> I have represented Seven Oaks Partners, LP ("Seven Oaks"), in the Connecticut Superior Court lawsuit, Sovereign Bank v. James Licata, et al. (Docket # FST CV 02-0188146 S) (the "State Action"), in Seven Oaks' efforts to foreclose the mortgage held by Seven Oaks on property known as 21 [sic] Meeting House Road, Greenwich, CT.

> […]

> After the Connecticut Supreme Court declined to hear Seven Oaks' appeal from the adverse judgment on the counterclaim obtained against it, in October 2012, I filed a motion in the State Action to enter and reset the law dates.

> The Superior Court initially assigned a hearing date on that motion for November 13, 2012, before the Honorable Douglas Mintz. I appeared in court on that date, on behalf of Seven Oaks. Attorney Ridgely Brown also appeared in court that date, on behalf of Cynthia Licata.

(Appellee's Br. and Appx. at 71.)

The record contains a certificate of service dated November 13, 2012 that indicates that notice of the amended schedules was provided to "any and all entities affected by the amendment on the attached list." (*Id.* at 27.) The service list does not include Appellant or her attorney (*id.* at 28), but as part of the amendment, Debtor added Appellant and her husband to the creditor matrix (*id.* at 33-34). Debtor added Appellant's husband to the creditor matrix with a Bradenton, Florida address, and provided two addresses for Appellant on the creditor matrix: the disputed property (23 Meeting House Road), and care of her state court appellate attorney, Ridgely Brown, at his office address in Stamford, Connecticut. (*Id.* at 34.) Appellant concedes that notice of the amended schedule was sent to Attorney Brown, Appellant, and Appellant's husband at those addresses. (Appellant's Br. at 7.)

Appellant contends that she was not living with her husband at the time, that her husband did not live at the Bradenton, Florida address, and that Debtor knew that she was no longer living at the disputed property. (Appellant's Appx. Vol. 3 [Doc. # 10-2] at 5.)

At the time that Debtor amended its schedules to list Appellant as an unsecured creditor, the bar date for filing proofs of claims had passed three months earlier—on August 13, 2012. (Appellant's Appx. Vol. 2 at 36.) On April 19, 2013, Debtor filed a motion to set a new bar date for creditors added on November 14, 2012—namely, Appellant and her husband. (*Id.*) On May 7, 2013, the Bankruptcy Court granted Debtor's motion and set a bar date of July 8, 2013 for the filing of proofs of claims by Appellant and her husband. (*Id.* at 45-46.) On May 9, 2013, Debtor certified service by mail of the order setting the bar date on Appellant at three addresses in Connecticut and Florida and on her husband at three addresses in Florida. (*Id.* at 48-49.) Appellant contends that she did not reside at or have a place of business at any of those addresses. (Appellant's Appx. Vol. 3 at 5.)

Appellant avers that she did not become aware that Debtor had filed a bankruptcy petition until shortly before her proof of claim was filed on September 5, 2014, and that at the time Debtor "filed amended schedules adding [her] as a creditor on November 14, 2012," Attorney Brown "was not actively representing" her. (*Id.* at 11.) Further, Appellant states that when Debtor filed an amended schedule listing her as a creditor on November 14, 2012, she was living in Sarasota, Florida, and that when notice of the bar date was served in May 9, 2013, she was living in Juniper, Florida, and not at any of the addresses to which notice was mailed. (*Id.* at 11-12.) Appellant's husband states that he did not become aware of the bankruptcy until August 2014, and that in November 2012 and May 2013, he lived with his sister in Monroe, Connecticut, and not at any of the Florida addresses to which notice was sent. (*Id.* at 65.)

Appellant's attorney in the state court appeal, Ridgely Brown, states that he "represented [Appellant] in certain aspects of litigation with Seven Oaks Partners, L.P., concerning property located at 23 Meeting House Road, Greenwich, Connecticut, in particular in appeals from a trial court judgment in favor of [Appellant]." (*Id.* at 17.) Attorney Brown further states that after "the Connecticut Supreme Court dismissed Seven Oaks,' [sic] petition for certification as improvidently granted" he "did not actively represent [Appellant] until [he] was contacted to assist [Appellant] in filing a proof of claim, which was done on September 5, 2014." (*Id.*) Finally, Attorney Brown states that he never represented Appellant's husband, and that he did not receive notice of a bar date for Appellant nor in any other manner become aware of the bar date for Appellant until he assisted her in filing her proof of claim on September 5, 2014. (*Id.* at 18.) Attorney Brown's affidavit does not dispute the fact that he was aware of Debtor's bankruptcy petition as of November 2012, nor that he was served with notice of the amended schedules on

November 13, 2012. (*See id.* at 17-18.; *see also* Appellant's Br. at 7 (conceding that notice of the amended schedule was sent to Attorney Brown).)

However, Debtor's state-court attorney Howard Wolfe states that notwithstanding Attorney Brown's representations, Attorney Brown was in fact actively representing Appellant in November 2012 in the state court litigation, as evidenced by his appearance on the record of the November 13, 2012 state court hearing. (Appellee's Br. and Appx. [Doc. # 13] at 71-72.) Moreover, the transcript of those proceedings before Judge Douglas Mintz in the Connecticut Superior Court, reveals that Attorney Brown entered an appearance that day on behalf of Appellant, during a time period in which he claimed not to be "actively" representing her. (*Id.* at 99-100.) During that hearing on the parties' state-law claims, Attorney Wolfe stated his position that if Appellant wanted to collect her $500,000 judgment, she would need to do so by filing a proof of claim in the bankruptcy proceeding, even though counsel for both parties acknowledged the fact that Debtor had not yet listed Appellant as a creditor on Debtor's schedules:

> MR. WOLFE: Well, first of all, Your Honor, there were counter claims. The judgment was appealed. It came back down in February of this year. In January of this year Seven Oaks filed a bankruptcy. To the extent that they want to claim that five hundred thousand, they have the right to do so under proof of claim in that bankruptcy action. They don't get to do it by way of setoff in this action. They are a general, unsecured creditor. They have no attachment in this --
>
> THE COURT: Is Seven Oaks in bankruptcy?
>
> MR. WOLFE: Yes.
>
> [ . . . ]
>
> MR. BROWN: They don't list us as a creditor in the bankruptcy proceeding. Today-
>
> THE COURT: Do you list them as a creditor in the --

MR. WOLFE: We are not handling --

MR. BROWN: No notice whatsoever, Your Honor.

[ . . . ]

THE COURT: You represented to me that they were in the bankruptcy court. If they were never listed as a creditor, they are not bound by the bankruptcy court, are they?

MR. WOLFE: I've been -- excuse me, Your Honor. First of all, we are not representing them is the answer to your first question. The follow-up question was are they in it. I don't know what they filed in the case. I did find out, I did observe that they are not they were not listed in the original schedules. I notified bankruptcy counsel. He told me that he was going to add them to the schedule and put them on notice.

THE COURT: You are a commissioner of the Superior Court, counselor. Has it been done?

MR. WOLFE: Excuse me?

THE COURT: Has it been done?

MR. WOLFE: I don't know whether --

THE COURT: So then why are you here and telling me that I can't deduct the five hundred thousand dollars when you don't know?

MR. WOLFE: Because they are on notice of the bankruptcy, Your Honor. It has occurred. It is of record. They are on notice --

THE COURT: But they are not a listed creditor.

MR. WOLFE: That was --

MR. BROWN: Four days ago I found out about --

MR. WOLFE: What that affects, Your Honor, what that affects is their ability to file a proof of claim beyond original bar dates.

(*Id.* at 99-111.)

In summary, this hearing took place on November 13, 2012. Appellant concedes that notice of the amended schedules was sent to Attorney Brown, but the record does not make clear whether notice was sent to him on November 13, November 14, or shortly thereafter. On May 7, 2013, the bar date was set for July 8, 2013, but Appellant did not file her proof of claim until September 5, 2014.

On December 23, 2014, Debtor filed an objection to Appellant's claim as untimely. (Appellant's Appx. Vol. 3 at 28.) On January 24, 2017, Appellant filed her response to the objection. (*Id.* at 2.) On March 28, 2017, the Bankruptcy Court held a hearing on the objection and disallowed Appellant's claim, entering an order the following day [Doc. #1-1] to that effect.

*Findings of the Bankruptcy Court*

On the record of March 28, 2017, the Bankruptcy Court made the following findings:

The claims bar date in the case was set as July 8th, 2013 . . . [and] Claim no. 4 was filed by Cynthia Licata on September 5, 2014, more than a year after the bar date.

Ms. Licata[] . . . never sought permission from the court to file a late claim.

It appears from the record of the case that Ms. Licata was served with notice of claims bar date at five different addresses.

[. . .]

The case was converted to Chapter 11 on April . . . 12, 2012.

[. . .]

[Despite Ms. Licata's claim that she did not receive any notice of conversion or notice of any claims bar date, the record of the case indicates] that Ms. Licata was served at those five different addresses and that [her attorney] Mr. Ridgely Brown

indicated to Judge Mintz in [November] 2012 that he was representing Cynthia Licata and the issue of the Seven Oaks bankruptcy case was discussed at the hearing in front of Judge Mintz, as set forth in the transcript of the hearing . . . .

Ms. Licata appears to have failed to inform the court -- or put any notice on the docket of where she lived at the time that the notice of the claims bar date was set. She didn't submit any evidence to verify where she lived at that time. [Ms. Licata's] attorney in the foreclosure action [Mr. Brown] was served with the notice. The Debtor amended its schedules to list Ms. Licata's claim after the appeal was dismissed on February 21st, 2012.

Ms. Licata has not demonstrated excusable neglect to justify her late filed claim.

For all those reasons, including the reasons set forth in the prior hearings on this matter in this case, and the issues raised at the hearing today, the objection to claim no. 4 is sustained.

(March 28, 2017 Transcript of Proceedings before the Hon. Julie A. Manning [Doc. # 8] at 23-25.)

## II.      Discussion

*Standard of Review*

On appeal, a bankruptcy court's findings of fact are reviewed for clear error, while conclusions of law are reviewed *de novo. In re DeGeorge Fin. Corp.*, No. 99-32300-02 (ASD), 2002 WL 31096716, at *4 (D. Conn. July 15, 2002) (*citing* Fed. R. Bankr. P. 8013; *National Union Fire Ins. Co. v. Bonnanzio*, 91 F.3d 296, 300 (2d Cir. 1996)). "Bankruptcy court decisions to deny a request to file late are reviewed for abuse of discretion." *In re Enron Corp.*, 419 F.3d 115, 124 (2d Cir. 2005).

*Excusable Neglect*

Under Fed. R. Bankr. P. 9006(b)(1), "when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of

the specified period permit the act to be done where the failure to act was the result of excusable neglect." "The 'excusable neglect' standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases[.]" *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389, (1993). This "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission[,]" including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395.

"The burden of proving excusable neglect lies with the late-claimant." *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005) (citations and internal quotations omitted). The Second Circuit has "taken a hard line in applying the *Pioneer* test[,]" and, in applying the *Pioneer* test, focuses primarily on the third *Pioneer* factor: "the reason for the delay, including whether it was within the reasonable control of the movant." *Id.* (citations and internal quotations omitted).

For the purposes of the excusable neglect inquiry, clients are "held accountable for the acts and omissions of their chosen counsel[,]" and "in determining whether [claimants'] failure to file their proofs of claim prior to the bar date [is] excusable, the proper focus is upon whether the neglect of [claimants] *and their counsel* [is] excusable." *Id.* at 397 (emphasis in original).

*Notice to Counsel*

Although "[n]otice served upon a party's counsel generally satisfies any requirement to give notice to that party[,] . . . [i]n bankruptcy cases . . . courts have held that notice served on a creditor's nonbankruptcy attorney imputes notice to the creditor [only] so long as there is a nexus between the creditor's retention of the attorney and the creditor's claim against the debtor." *In re Najjar*, No. 06-01955 (AJG), 2007 WL 1395399, at *4 (Bankr. S.D.N.Y. May 11, 2007) (internal citations

and quotations omitted). "A nexus has been found sufficient to support imputing notice to a creditor where such creditor's nonbankruptcy attorney participated in the bankruptcy case[,]" as well as where "an attorney did not participate in the bankruptcy case but whose activity on behalf of the creditor in a nonbankruptcy proceeding was significant and ongoing at the time of the bankruptcy." *Id.*

*Ms. Licata's Late-Filed Claim*

Appellant contends that the "Bankruptcy Court erred in disallowing [her] proof of claim, which represented a final, liquidated judgment upheld on appeal by the Connecticut Supreme Court." (Appellant's Br. at 8.) According to Appellant, "Debtor repeatedly filed false sworn schedules omitting Appellant's claim in its bankruptcy case and even when it eventually listed the claim falsely described it as 'unliquidated' and 'disputed' when, had it been properly listed Appellant would not have been required to file a claim." (*Id.*)

Under 11 U.S.C.A. § 1111 (a), "[a] proof of claim or interest is deemed filed . . . for any claim or interest that appears in the schedules filed under section 521(a)(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated." *See In re Trocom Constr. Corp.*, No. 1-15-42145-NHL, 2016 WL 4575546, at *2 (Bankr. E.D.N.Y. Sept. 1, 2016) ("Not every creditor is required to file a proof of claim in a chapter 11 case. An unsecured creditor whose claim is scheduled as disputed, contingent, or unliquidated must file a timely proof of claim in order to be treated as a creditor with respect to that claim for voting and distribution purposes. Similarly, creditors who disagree with the amount or status of their claim as set forth in the debtor's schedules must also file a proof of claim prior to the bar date." (internal citations and quotations omitted)). Accordingly, had Debtor scheduled Appellant's claim but not scheduled it

as disputed and unliquidated, the claim would have been "deemed filed" and Appellant would not have needed to file a proof of claim by the bar date set by the Bankruptcy Court.

Here, Appellant's claim was based on a final judgment that was left undisturbed by the Connecticut Supreme Court on February 21, 2012, months before Debtor-Appellee scheduled the claim. *See Sovereign*, 303 Conn. at 723. Appellee argues that it had a valid basis to list Appellant's claim as disputed and unliquidated, asserting that Appellee would be legally entitled to use a $270,000 note (plus interest) for a second mortgage on the title "which was foreclosed out" as the basis for a defense of equitable recoupment "to reduce or offset the judgment Licata held against the Debtor." (Appellee's Br. at 17.) But while Appellee cites a full page of cases for the proposition that the equitable recoupment defense is not itself subject to a statute of limitations defense where the underlying action is timely, Appellee provides no authority for the proposition that a final judgment, affirmed on appeal, could be considered "disputed" or "unliquidated" under the Bankruptcy Code as a result of Appellee's claimed equitable defense. Appellee's scheduling of Appellant's judgment as disputed and unliquidated therefore seems unwarranted.[2]

---

[2] As explained above, Debtor scheduled Appellant's $500,000 claim as "disputed" and "unliquidated" on November 13, 2012. (Appellant's Appx. Vol. 2 at 27, 32.) When she filed her proof of claim on September 5, 2014, Appellant claimed that she was entitled to $500,000 on the basis of the "Trial Court Judgment on Jury Verdict Affirmed on Appeal" but also that she was entitled to $400,000 in post-judgment interest. (*Id.* at 51-55.) Accordingly, the Bankruptcy Court disallowed Ms. Licata's Proof of Claim "in the amount of $900,000, in its entirety." ([Doc. #1-1].)

The issue not having been raised, the Court makes no finding as to whether Debtor should have scheduled any amount of post-judgment interest or whether Debtor would have been entitled to schedule this additional amount as disputed or unliquidated, but notes that the disputed nature of any amounts *over* $500,000 does not of course affect the validity or finality of a scheduled claim for $500,000.

However, the Bankruptcy Court relied upon, and the Court is convinced by, ample evidence in the record demonstrating that Appellant, through her attorney, had notice of Debtor's bankruptcy at the time that Debtor appears to have improperly scheduled Appellant's claim, as well as notice of the apparently improper scheduling itself. Appellant has provided the Court with no authority, and the Court has found no authority, to the effect that the fact of improper scheduling of a claim by a Chapter 11 debtor is sufficient to negate an unsecured creditor's notice of the bankruptcy when evaluating the permissibility of a late-filed claim. *See In re Mooney*, 532 B.R. 313, 326 (Bankr. D. Idaho 2015) ("even if one supposes 'improper scheduling,' [claimant] had both notice and actual knowledge of the bankruptcy . . . . As a respected treatise states: [I]f the creditor had 'notice or actual knowledge of the case' in time for timely filing of a proof of claim . . . , the debt will be discharged even though not listed or scheduled, listed or scheduled improperly, or listed or scheduled tardily." (*citing* 4 Collier on Bankruptcy ¶ 523.09[4][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)).

On November 13, 2012, Appellant's attorney in the state-court litigation appeared on the record in Connecticut Superior Court on behalf of Appellant, at a hearing at which Appellant's attorney, Debtor's counsel, and Judge Mintz discussed the effect of Debtor's bankruptcy on Appellant's $500,000 judgment at length. (*See* Appellee's Br. and Appx. at 99-111.) After discussion on the record of the fact that Debtor-Appellee had theretofore failed to schedule Appellant's claim, Appellee scheduled Appellant's claim the same day, and sent notice to Attorney Brown. (*Id.*; Appellant's Appx. Vol. 2 at 27, 32.) Appellee did not file the motion to set a new bar date until April 19, 2013, and the bar date was set for July 8, 2013. (*Id.* at 36, 45-46.)

Under the excusable neglect standard, the primary question is "the reason for the delay, including whether it was within the reasonable control of the movant." *In re Enron Corp.*, 419 F.3d

at 122. And "in determining whether [claimants'] failure to file their proofs of claim prior to the bar date [is] excusable[,]" clients are "held accountable for the acts and omissions of their chosen counsel." *Id.*

While Attorney Brown does not appear to have represented Appellant in the bankruptcy proceeding *prior* to Appellant's September 2014 filing of her claim, he was provided notice of the bankruptcy petition and its scheduling of Appellant's claim on or around November 13, 2012, the same day he appeared on Appellant's behalf in the related state court hearing at which the status of the bankruptcy proceeding, and its impact on Appellant's $500,000 judgment, was discussed. And while Attorney Brown states that he did not learn of the bar date until shortly before he filed the proof of claim, he does not dispute the fact that he was aware of the bankruptcy petition's potential effect on Appellant's judgment at the time he was served notice. Thus, imputing notice to Appellant as a result of the notice received by her state court attorney is entirely proper. *See In re Najjar*, No. 06-01955 (AJG), 2007 WL 1395399, at *4 (Bankr. S.D.N.Y. May 11, 2007) ("notice served on a creditor's nonbankruptcy attorney imputes notice to the creditor [only] so long as there is a nexus between the creditor's retention of the attorney and the creditor's claim against the debtor"; sufficient nexus to impute notice exists where "an attorney did not participate in the bankruptcy case but whose activity on behalf of the creditor in a nonbankruptcy proceeding was significant and ongoing at the time of the bankruptcy").

The notice that was sent to Attorney Brown on or around November 13, 2012 only provided notice of the scheduling of Appellant's claim and of the bankruptcy petition, but not of the bar date, which had not yet been set. Given the facts of this case, however, this distinction is of no import. *Cf. In re Medaglia*, 52 F.3d 451, 454, 457 (2d Cir. 1995) (bankruptcy judge "granted summary judgment for Medaglia on the ground that, even if plaintiffs did not receive formal notice

of the *bar date*, they did have timely, actual knowledge of the Chapter 7 *petition*" and "because appellants had timely, actual knowledge of Medaglia's Chapter 7 petition, application of § 523(a)(3)(B) to them did not deprive them of their Fifth Amendment due process rights." (emphasis added)).

As part of the notice of the bankruptcy petition that Appellant's attorney received in November 2012, he received a copy of the filing that showed Debtor's apparently erroneous scheduling of Appellant's claim as disputed and unliquidated. (*See* Appx. Vol. 2 at 32.) Thus, the circumstances of this case reflect an unsecured creditor's attorney who (1) represented the creditor in state court proceedings with a substantial nexus to the creditor's claim against the debtor, (2) discussed the interconnection of the state court litigation with the bankruptcy petition on the record in state court, showing knowledge of the fact and status of the bankruptcy petition, and (3) was provided with notice of the petition *and its erroneous scheduling of Appellant's claim.* Despite Appellant's state-court counsel in the related matter thus having both knowledge and notice of the petition and the erroneous scheduling in November 2012, the proof of claim was not filed until September 2014—almost two years later, and more than a year after the bar date of July 8, 2013. Under these circumstances, Appellant has not shown excusable neglect for the late filing of her claim.

Based on the notice provided to her attorney and the capacity in which her attorney represented her at the time, the Bankruptcy Court did not err as a matter of law in finding that Appellant had not shown excusable neglect for the late filing. The Bankruptcy Court's findings of fact were supported by the record and not clearly erroneous: the Bankruptcy Court did not err in finding that (1) Attorney Brown appeared at a state court hearing on behalf of Appellant at which the Seven Oaks bankruptcy case was discussed in November 2012, (2) Attorney Brown was served

with notice of the scheduling of Appellant's judgment, (3) the claims bar date was set as July 8th, 2013, and (4) Claim no. 4 was filed by Appellant on September 5, 2014, more than a year after the bar date. Accordingly, the Bankruptcy Court's disallowance of Appellant's claim was not an abuse of discretion.

Because the Court finds that the Bankruptcy Court properly imputed notice provided to Appellant's attorney to Appellant, and that this notice sufficed to make Appellant's more than year-long delay in filing her proof of claim inexcusable, the Court need not address whether the notice provided to Appellant herself was adequate. The Court has considered Appellant's remaining arguments and finds them to be without merit.

### III.    Conclusion

For the foregoing reasons, the order of the Bankruptcy Court sustaining Debtor's objection to Appellant's claim is AFFIRMED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 3rd day of January 2018.